**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID H.,                               )
                                        )
           Plaintiff,                  )    Case No. 1:22-cv-4588
v.                                      )
                                        )    Magistrate Judge Jeannice W. Appenteng
LELAND DUDEK, Acting                    )
Commissioner of Social Security,[1]     )
                                        )
           Defendant.                  )

**MEMORANDUM OPINION AND ORDER**

Plaintiff David H. seeks to overturn the final decision of the Commissioner of

Social Security ("Commissioner") denying his application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. The parties consented to

the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §

636(c), and plaintiff filed a brief explaining why the Commissioner's decision should

be reversed and the case remanded. The Commissioner responded with a competing

motion for summary judgment in support of affirming the decision. After review of

the record and the parties' respective arguments, the Court grants the

Commissioner's motion.

**BACKGROUND**

Plaintiff protectively applied for DIB on December 19, 2019 alleging

disability since December 1, 2018 due to motor vehicle accidents in 2011 and 2013,

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025.
He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

lower back problems and chronic back pain, neuropathy and numbness in the left leg, numbness and tingling in the arms, a need to change positions frequently, and difficulty sleeping. Administrative Record ("R.") 225, 258. Born in November 1967, plaintiff was 51 years old as of the alleged onset date, making him a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d); R. 225. He was self-employed for many years performing landscaping, construction, and restoration work but he quit in December 2018 due to his impairments. R. 259-60. He has not engaged in substantial gainful activity since that date. R. 17.

The Social Security Administration denied plaintiff's application initially on September 30, 2020, and upon reconsideration on March 3, 2021. R. 74-106. Plaintiff filed a timely request for a hearing and on August 9, 2021, he appeared before an administrative law judge ("ALJ"). R. 34. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Leida Woodham (the "VE").[2] R. 36-72. On August 25, 2021, the ALJ found that plaintiff's degenerative disc disease of the lumbar and cervical spine and obesity are severe impairments, but that they do not alone or in combination with his non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17-20.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work involving: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

occasional stooping, kneeling, crouching, and crawling. R. 20-25. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past landscape gardening work, but could perform a significant number of other jobs available in the national economy. R. 25-27. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 27. The Appeals Council denied plaintiff's request for review on June 30, 2022. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ: (1) erred in rejecting the lifting restrictions set forth by consultative examiner William J. Lopez, M.D.; and (2) improperly discounted his subjective statements regarding his physical symptoms.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A. Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54

4

(internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## B.     Analysis

### 1.     Dr. Lopez's Opinion

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in rejecting the lifting limitation set forth by Dr. William Lopez. Dkt. 11 at 7-11; Dkt. 16 at 1-2. Since Plaintiff filed his claim in December 2019, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also Robert J. L. v. O'Malley*, No. 20 C 50444, 2024 WL 809091, at *2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations

presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

On September 19, 2020, Dr. Lopez conducted an internal medicine consultative examination of plaintiff for the Bureau of Disability Determination Services. Plaintiff complained that since his 2011 and 2013 motor vehicle accidents, he has suffered from low back pain, left leg neuropathy and numbness, tingling in the arms, and poor sleep. R. 1594. On exam plaintiff could not completely squat, was unwilling to perform toe/heel walk, and had limited range of motion in the lumbar spine. R. 1595-96. Other findings, however, were generally mild: only mild tenderness in the right lateral neck with no spasms and a negative Spurling test; no tenderness, swelling, or warmth in the extremities; mild difficulty standing on one foot; mild difficulty getting on and off the exam table; ability to walk more than 50 feet unassisted with a normal gait; full grip strength of 5/5 and normal ability to grasp, manipulate objects, extend the hands, make fists, and oppose fingers; normal range of motion in the shoulders, elbows, wrists, hips, knees, ankles, and cervical spine; mild tenderness in the mid-left lumbar area with no spasms; negative straight leg raise bilaterally; full motor strength; normal reflexes and sensation; and negative Romberg testing. *Id.* Dr. Lopez assessed lumbago with radiculopathy, probable lumbar and cervical degenerative disc disease, cervicalgia, and obesity. R.

1596-97. He noted that plaintiff can sit, stand, walk, and handle and manipulate

objects, but can only lift, carry, push, and pull objects up to eight pounds. R. 1597.

In finding Dr. Lopez's opinion generally unpersuasive, the ALJ acknowledged

plaintiff's complaints about pain and difficulty lifting and carrying objects, but saw

no evidence in the record to support a restriction to eight pounds.[4] R. 25. The Court

finds no error in this assessment. To begin, the extreme lifting/carrying restriction

is inconsistent with Dr. Lopez's own exam, which revealed only mild tenderness in

the neck and back and some limited back range of motion. *Id. See Pavlicek v. Saul*,

994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a physician's

opinion when it "is inconsistent with the physician's treatment notes").

The lifting/carrying restriction is also inconsistent with other objective

evidence. The record reflects that plaintiff continued working for many years after

his two motor vehicle accidents and received conservative treatment including

physical therapy, pain medications, epidural steroid injections ("ESIs"), and

chiropractic care. R. 21, 341-45, 414-19, 451-52, 459-505, 769-1272, 1283-86, 1350-

73, 1414-1519. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("Prill's

treatment – injections, orthotics, and physical therapy – was conservative").

On May 22, 2018, plaintiff started seeing neurosurgeon Ronald Michael, M.D.

for back and neck pain. Dr. Michael prescribed Mobic, Flexeril, gabapentin and an

---

[4] The Court has its doubts that the reference to plaintiff's ability to lift and carry eight
pounds qualifies as an opinion. The language is located in a section that is titled "Medical
Source Statement (Activities of Daily Living)" and appears to document plaintiff's own
reports of his abilities and activities. R. 1597. Nevertheless, since the ALJ and the parties
treat the restriction as an opinion, the Court does so as well.

analgesic cream, and sent plaintiff for MRIs of the cervical and lumbar spine. R. 21,
1520-21. Those May 29, 2018 tests showed herniated discs, mild stenosis, and
neuroforaminal narrowing at C3-C4, C4-C5, L5-S1, and L4-L5. R. 21, 1554-55. Dr.
Michael stated that plaintiff could either "learn to live with his pain" or have a
diagnostic lumbar discography to determine possible surgical options.[5] R. 21, 1522.
Plaintiff declined the discography and instead opted for continued medication and
additional ESIs. R. 21-22, 1525, 1527-31.

During an exam with internist John A. Panozzo, M.D., on September 20,
2018, plaintiff had some paraspinal muscle spasm but no back tenderness and full
range of motion in the neck. R. 21, 1389. And aside from minimal weakness in the
left leg on raise only, plaintiff exhibited normal strength in his arms and legs. *Id.*
Plaintiff had three steroid injections in October 2018, and by November 2018 he
was doing well, though Dr. Michael cautioned that the results were likely
temporary. R. 22, 1527-32.

At a follow-up appointment with Dr. Michael on January 12, 2019, plaintiff
complained of: upper extremity weakness, numbness, and tingling; back pain and
numbness; and pain, tingling, and weakness in the left leg. Plaintiff again refused
the discography, stating he could manage with medication. R. 22, 1533. Though a
February 7, 2019 MRI of the lumbosacral spine showed larger disc herniation at L5-
S1 with an annular tear, plaintiff continued to decline a discography. R. 22, 1534,

---

[5] "A discogram, also called discography, is an imaging test used to look for the cause of back
pain." Mayo Clinic, *Discogram*, https://www.mayoclinic.org/tests-procedures/discogram/
about/pac-20393818, *archived at* http://perma.cc/2KVY-KVSS.

1537. On April 6, 2019, Dr. Michael discharged plaintiff from his care. R. 22, 1534,

1538.

Eight months later, in December 2019, plaintiff saw Kathleen Henry, APN

for medication refills. An exam revealed no tenderness in the spine, normal

extremities, and no neurological deficits despite complaints of pain. R. 22, 1396-97.

Nurse Henry recommended that plaintiff see a pain management specialist but

there is no evidence that he did so. *Id.* Shortly thereafter on February 17, 2020,

plaintiff returned to Dr. Michael with continuing upper extremity pain, numbness,

and tingling but no weakness. He also reported back pain, along with pain,

numbness, tingling, and weakness in the left leg. R. 22, 1553. Plaintiff agreed to try

facet and caudal blocks. *Id.*

After receiving the injections, plaintiff started treating with orthopedic

surgeon Blair Andrew Rhode, M.D. R. 22, 1611. An exam on April 8, 2020 showed

pain in the right lumbar paraspinal muscles, a positive straight leg raise on the left;

and a positive Faber's on the left. *Id.* At Dr. Rhode's suggestion, on May 5, 2020,

plaintiff saw neurosurgeon Sergey Neckrysh, M.D. R. 22, 1583, 1697. Dr. Neckrysh

noted that an April 2020 MRI showed a "black" or dehydrated disc at L5-S1 with

associated moderate to severe facet arthropathy and foraminal stenosis. *Id.* Like Dr.

Michael, Dr. Neckrysh recommended a discography at L5-S1 and explained that if it

was positive he could perform a decompression and fusion. R. 22, 1584. If the test

was negative, Dr. Neckrysh would perform a simple decompression but that might

not address plaintiff's low back pain. *Id.* Plaintiff was not interested in the

discography. *Id*. In June 2020, plaintiff achieved 20% to 30% improvement in his pain following another ESI. R. 23, 1614-15, 1875. Thereafter he continued treating solely with medication through March 1, 2021. R. 23-24, 1883, 1943-44.

Plaintiff fails to explain how these records support Dr. Lopez's conclusion that he is incapable of lifting more than eight pounds. *See Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at \*12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted physician's statement that was "inconsistent with other objective evidence in the record"). Notably, state agency reviewers James Hinchen, M.D. and Douglas Chang, M.D. opined in September 2020 and January 2021, respectively, that plaintiff can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, as required for light work. R. 83-84, 99-100. Both physicians expressly considered Dr. Lopez's report in making this determination. *Id*. The ALJ reasonably adopted the state agency reviewers' lifting restrictions given their consistency with the record. R. 24-25.

Plaintiff also takes issue with the ALJ's observation that Dr. Lopez's opinion conflicted with plaintiff's own statements that he could "tolerate the pain" and engage in a variety of activities with only conservative treatment. R. 25. Dkt. 11 at 9-10. The Court addresses the credibility assessment below, but finds no error in the ALJ pointing out the cited inconsistencies in discounting Dr. Lopez's opinion. *See, e.g., Charles G. v. Kijakazi*, No. 19 C 4822, 2022 WL 279570, at \*5 (N.D. Ill. Jan. 31, 2022) (in evaluating a physician's opinion, the ALJ properly considered its

inconsistency with plaintiff's testimony and reported ability to engage in activities of daily living).

Viewing the record as a whole, the ALJ did not err in rejecting Dr. Lopez's opinion that plaintiff is incapable of lifting and carrying more than eight pounds. "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 C 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). The Seventh Circuit has made clear that "[s]ubstantial evidence is not a high hurdle to clear," *Bruno v. Saul*, 817 F. Appx. 238, 241 (7th Cir. 2020), and the ALJ's decision meets that threshold. Plaintiff's request to remand the case for further consideration of Dr. Lopez's opinion is denied.

### 2.    Subjective Symptom Evaluation

Plaintiff next argues that the ALJ failed to properly evaluate his statements regarding the limiting effects of his physical impairments. Dkt 11 at 11-14; Dkt. 16 at 3. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due

11

to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304,
at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it
relates to every factor,' but an ALJ may not ignore an entire line of evidence
contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at
*8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir.
2022)). "As long as an ALJ gives specific reasons supported by the record, [the
Court] will not overturn a credibility determination unless it is patently wrong."
*Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)
(patently wrong "means that the decision lacks any explanation or support.").
"Subjective statements by claimants as to pain or other symptoms are not alone
conclusive evidence of disability and must be supported by other objective evidence."
*Grotts*, 27 F.4th at 1278.

In discounting plaintiff's allegations of disabling physical symptoms, the ALJ
first noted that they were inconsistent with Dr. Lopez's opinion and with objective
medical records showing largely mild deficits. R. 21-25. Based on the evidence set
forth in the previous section, the Court sees no error in this assessment. *See
Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6,
2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies
between the objective evidence and self-reports may suggest symptom
exaggeration"). Plaintiff demands to know "which statements are or are not
credible," Dkt. 11 at 12-13, but no such specificity is required. *See Alyssa K. v.
Colvin*, No. 24 C 2963, 2025 WL 50637, at *5 (N.D. Ill. Jan. 8, 2025) (quoting

*Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012)) ("an ALJ's credibility findings need not specify which statements were not credible."). *Cf. Chase v. Astrue*, 458 F. Appx. 553, 558 (7th Cir. 2012) (ALJ erred by ignoring plaintiff's testimony and providing no explanation for why his statements were not credible).

Contrary to plaintiff's assertion, moreover, the ALJ did not ignore or reject his complaints of pain solely due to a lack of objective support. Dkt. 11 at 11, 12 (citing *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016) ("the absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts")). Rather, the ALJ also found plaintiff's complaints not fully convincing given his unwillingness to undergo a diagnostic discography as repeatedly recommended by his neurosurgeons. R. 21-23. Plaintiff argues this was improper because Dr. Neckrysh stated that surgery would only address plaintiff's leg pain and numbness, not his back pain. Dkt. 11 at 9-10, 13. This is incorrect.

Dr. Neckrysh explained that while a decompression and fusion procedure could address all of plaintiff's problems, a simple decompression would only address leg pain and numbness. R. 1584. The ALJ acknowledged plaintiff's concern that there is no guarantee a spinal fusion would fix his problems. R. 21, 65-66. But it was wholly reasonable for the ALJ to cite plaintiff's refusal to undergo a diagnostic procedure – a precursor to surgery – as one reason undermining his complaints of disabling pain. *See Edward H. v. Kijakazi*, No. 20 C 3847, 2023 WL 2683171, at *10 (N.D. Ill. Mar. 29, 2023) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009))

("As a general matter, an ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility").

The ALJ also discounted plaintiff's subjective complaints because they were inconsistent with his activities of daily living, which included visiting a health club three to four times per week to walk in the pool, attending events, driving, grocery shopping, self-grooming, taking out the trash, washing dishes for 15 to 20 minutes at a time, and making regular trips to the post office. R. 24, 25. The Seventh Circuit has made clear that "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016).

Plaintiff objects that merely listing daily activities "does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful activity." Dkt. 11 at 10, 13-14 (quoting *Nelson v. Colvin*, No. 13 C 2902, 2016 WL 337143, at *6 (N.D. Ill. Jan. 27, 2016)). But this is not a case where the ALJ equated plaintiff's ability to perform certain activities with an ability to work. Instead, the ALJ used plaintiff's reported activities to "assess the credibility of h[is] statements concerning the intensity, persistence, or limiting effects of h[is] symptoms consistent with the applicable rules." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). This was entirely proper.

An ALJ's credibility assessment "need not be perfect; it just can't be patently wrong." *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. April

10, 2014) (citing *Schreiber v. Colvin*, 519 F. Appx. 951, 961 (7th Cir. 2013)). And

"even if reasonable minds could differ on the ALJ's rejection of [plaintiff's]

testimony, we will not reweigh evidence or substitute our judgment for the ALJ's."

*Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). Viewing the record as a whole, the

ALJ's assessment of plaintiff's subjective statements was not patently wrong and

his request to remand the case for further consideration of this issue is denied.

### CONCLUSION

For the reasons stated above, plaintiff's request to reverse or remand

the case [11] is denied, and the Commissioner's motion for summary

judgment [13] is granted. The Clerk is directed to enter judgment in favor of

the Commissioner.

**SO ORDERED.**

_____

**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 2/21/2025

15